UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| M. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00851-SEB-MPB |
| | ) |
| AMANDA COPELAND, | ) |
| BRANDON MILLER, | ) |
| ARAMARK CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff M. Jones, an Indiana inmate, brought this action under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment rights by requiring him to reuse a plastic cup and spork without providing sufficient opportunities for him to clean and sanitize them. He alleges that he became ill as a result. The defendants have moved for summary judgment.[1] Because there is no evidence in the record that Aramark implemented an unconstitutional policy or that Jones was injured as a result, the defendants' motion for summary judgment, dkt. [35], is **granted**.

---

[1] Jones responded in opposition to the motion and the defendants replied. Dkt. 44; dkt. 45. Jones then filed a surreply. Dkt. 46. Local Rule 56-1(d) permits a surreply if the reply cites new evidence or objects to the admissibility of the evidence cited in the response. Although Jones contends that the defendants' reply presented new evidence that the IDOC initiated the reusable utensil policy because inmates were flushing utensils down the prisons' toilets, that evidence was submitted with the defendant's motion for summary judgment and Jones could have addressed it in his response. The defendants' response objected to the admissibility of some of Jones's evidence. His surreply argues that the Court should consider the hearsay statements of Miller and Davis because he was unable to procure sworn statements from them. The Court therefore considers Jones's surreply only insofar as it argues that his hearsay evidence is admissible, as permitted by Local Rule 56-1(d).

# I.
# Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, "the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a *genuine issue for trial*.'" *Cincinnati Life Inc. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

# II.
# Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light

reasonably most favorable to Jones as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At all relevant times, Amanda Copeland was the District Manager for Aramark. Dkt. 37-1 at ¶ 3 (Copeland Declaration). Aramark is an independent contractor that contracts with the Indiana Department of Correction (IDOC) to supply food services. *Id*. at ¶ 5. The contract provides as follows:

> **1.1. Overview of Contractor's Responsibilities**
>
> 1. The Contractor shall operate and manage food services for correctional facilities under the jurisdiction of the Department of Correction. These duties include purchasing food supplies and small wares, on-site storage of food supplies; delivery of food supplies; preparation of food; servicing food to offenders, students and staff; cleaning and maintaining a sanitary food service area and designated are for storage of food supplies.

*Id*.

Aramark is responsible for cleaning and sanitizing the food service area, dining areas, and food storage areas. *Id.* at ¶ 5. Aramark is not responsible for the sanitization of any other part of the prison. *Id.* at ¶ 6. Aramark is also not responsible for providing hot water, soap, or cleaning supplies to inmates. *Id.* Hygiene items are supplied by the IDOC. *Id.* at ¶ 9.

Brandon Miller is the Food Services Director for Aramark at Pendleton. Dkt. 37-2 at ¶ 2 (Miller Declaration). The IDOC instructed him to implement a reusable cup and spork practice at Pendleton. *Id.* at ¶ 4.[2] IDOC has used this practice at other facilities. *Id.* It is Miller's understanding that the practice was put into place to reduce the amount of waste and prevent inmates from flushing disposable utensils down toilets. *Id.* After he received the request, he ordered cups and sporks and had them distributed to the inmates. *Id.* It is his understanding that the cups and sporks are safe for inmate use. *Id.*

---

[2] Miller's declaration contains two paragraphs numbered 4. The Court refers to the second paragraph numbered 4.

Miller has personally used the faucets in the kitchen and in the restrooms at Pendleton and those faucets always produced hot water. *Id.* at ¶ 5. Soap was also available. *Id.*

Copeland was not personally involved in the decision to issue cups or sporks at Pendleton. Dkt. 143-1 at ¶ 7. It has been her experience during her weekly visits that faucets in the kitchen and in the restrooms at Pendleton always produce hot water. *Id.* at ¶ 8.

Inmates received 2 plastic cups and 1 spork if they were in general population and 1 plastic cup and 1 spork if they were in restricted housing. *Id.* at ¶ 11. The inmates are only required to bring the cup and utensils to and from the dining halls. *Id.*

Jones does not have access to hot water in his cell. Dkts. 43-2 at ¶ 4 (Jones Declaration). When he leaves his housing unit to go to the library or recreation and ultimately the dining hall, he carries the utensils in his hands because he has no pockets. *Id.* at ¶ 11. IDOC staff provide him approximately one bar of soap per month. *Id.* at ¶ 5.

He became sick and Nurse Kristi Davis told him that his illness was caused by using his dirty cup and spork. *Id*. at ¶ 12. Jones does not describe his illness in any detail. He once overheard Miller say that Aramark requested the change to reusable cups and spoons. *Id*. at ¶ 10. Dr. Knieser is a doctor who provides services to inmates at Pendleton. Dkt. 37-3 at ¶ 3. (Dr. Knieser Declaration). He has never treated Jones for any illness, infection, sickness, or health condition that could conceivably be caused by unwashed cups and utensils. *Id.* at ¶ 5. He does not believe that it could be medically determined that the utensils or cups caused any health issues. *Id.* He is not aware of any inmates who have suffered any illness as a result of unwashed cups and utensils at Pendleton. *Id*.

### B. Analysis

Jones alleges that the defendants were deliberately indifferent to his health and safety by changing a policy in June 2019 so that reusable plastic cups and sporks would be used at Pendleton. He further alleges that the defendants failed to provide him with the means to sanitize the utensils and that this caused him to become ill.

At all relevant times, Jones was a convicted offender. This means that the Eighth Amendment applies to his claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). Minor injuries do not satisfy the objective component of an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

#### 1. Claims Against Aramark

Although a private entity, Aramark acts under color of state law and therefore may be liable for violating Jones's Eighth Amendment rights under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Walker*, 940 F.3d at 966. "Prevailing on such a claim requires evidence that a[n Aramark] policy, practice, or custom caused" the deliberate indifference. *Id.* "[A] plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal

5

[or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

Jones has failed to designate evidence sufficient to create a genuine issue of material fact as to who initiated the policy on reusable cups and sporks. The evidence is undisputed that the IDOC directed Miller to implement the policy. He complied by ordering the cups and sporks. Jones relies on an email from Miller to the IDOC and an order form to support his theory that *Aramark* initiated the policy. Dkt. 42 at 9-11; dkt. 43-4; dkt. 43-3. That email states:

> I have working the Warden Zatecky and Deputy Warden Alsip on a disposable program for the facility. We are looking at make a purchase of trays, tumblers, and sporks for the facility. We want to make sure that we order the product by policy. Miami facility did what we are looking at doing a few months ago and Aramark order the product and then invoiced the state. It was found after this took place that policy was not followed and we don't want to make that same mistake. I told Warden Zatecky I would get the bids that he needs for these project, however I need to know what vendors are in the states PeopleSoft system for me to reach out to for bids for this product. Could you help with some guidance on what vendors I should be reaching out to for bids? I have received a bid from Cooks Correctional not sure if they can be used or not.

Dkt. 43-4 (errors in original). The email says nothing about who initiated the policy; rather, it indicates that Miller needed assistance in locating a vendor to obtain bids for Warden Zatecky's "project." Dkt. 164-1 at 23. The email does not contradict Miller's sworn testimony. Moreover, the undisputed fact that Miller ordered the sporks sheds no light on who requested the policy change. While Jones contends that he overheard Miller say that Aramark requested the policy change, dkt. 43-2 at ¶ 10, this alleged statement is inadmissible hearsay that cannot be used to survive summary judgment. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016).

Jones also argues that "Aramark is responsible for servicing [sic] food to prisoners. Part of servicing food to prisoners is providing them utensils to eat the food served. In providing utensils to eat the food, Aramark is responsible for making sure the utensils are clean and sanitized for

health and safety purposes." Dkt. 42 at ¶ 3. But Jones has pointed to no contractual provision requiring Aramark to make sure inmates had the ability to clean their utensils once they were distributed. To the contrary, the IDOC is obligated to provide hygiene items, including hot water and soap.

For these reasons, Aramark is entitled to summary judgment.

**2. Claims Against Copeland and Miller**

As noted, to defeat summary judgment Jones must designate sufficient evidence to support the objectively serious and subjectively culpable components of his Eighth Amendment claims. *Eagan*, 987 F.3d at 693. The defendants assert that Jones has failed to present admissible evidence showing that he experienced objectively serious injuries. The Court need not consider whether being "sick" is objectively serious because Jones's claims fail on other grounds.

Neither Copeland nor Miller was involved in making the decision to issue reusable cups and sporks at Pendleton. The record is undisputed that neither of them had any reason to believe that the IDOC's decision would harm Jones. Miller was aware that other IDOC prisons had used the same types of utensils. It is his understanding that the cups and sporks were safe. Both Defendants believe that inmates have had access to soap and hot water and were therefore able to clean their utensils. Jones has failed to create a genuine issue of material fact as to whether either Copeland or Miller were aware that the change in policy would pose a substantial risk to his health and safety.

In addition, section 1983 allows for recovery only by a "party injured" by a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . caused any injury.")

7

(internal quotation omitted). Jones has presented no evidence other than his own speculation that using the reusable sporks and cups *caused* him to become ill. A party opposing summary judgment must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by "speculation or conjecture" will not suffice. *Skiba v. Ill. Cent. R. R. Co.,* 884 F.3d 708, 721 (7th Cir. 2018).

Jones contends that Nurse Davis "alerted" him to the "fact that the cause of my illness was the dirty utensils…" Dkt. 43-2 at ¶ 10. Again, this alleged statement is inadmissible hearsay that cannot be used to survive summary judgment. *Cairel*, 821 F.3d at 830. Jones also refers to news articles discussing the use of plasticware during the COVID-19 pandemic. Dkt. 43-5. These articles are also inadmissible hearsay. *See* Fed. R. Evid. 802; *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (newspaper article offered as proof of the truth of the article's contents was "classic" inadmissible hearsay).

In sum, there is no admissible evidence that Miller and Copeland were aware of a risk to Jones's health or that Jones became sick because he used reusable utensils. The defendants are entitled to judgment as a matter of law because Jones has "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323. Jones has failed to present evidence sufficient to create a genuine issue of material fact as to whether the defendants were deliberately indifferent to a substantial risk of serious harm.

## IV. Conclusion

For the reasons discussed above, the defendants' motion for summary judgment, dkt. [35], is **granted.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 6/28/2021

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

M. JONES
106644
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com